UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RALPH STANLEY COOPER,                                          6:11-cv-6028-TC

                                    Plaintiff,

                                                              ORDER

                    v.

KEVIN BENNETT,

                                    Defendant.

COFFIN, Magistrate Judge:

    Local Rule 48-2 provides:

    "[A]ttorneys, parties, witnesses, or court employees must not initiate contact with any juror concerning any case which that juror was sworn to try."

    Plaintiff filed this action on January 24, 2011 asserting various claims pursuant to 42 U.S.C. § 1983. On July 30, 2013, the court impaneled an eight-person jury to try plaintiff's claims that he had been unlawfully stopped and detained by Oregon State Trooper Kevin Bennett in Roseburg, Oregon while plaintiff and two companions were en route in a rental car from Oakland, California

Page 1 - ORDER

to Portland, Oregon. Another claim in the case concerned whether defendant Bennett unlawfully caused plaintiff's detention and search by Redding, California police while he was en route back to Oakland via Greyhound bus after the seizure of the rental vehicle (pursuant to the request of the rental company).

After the jury was impaneled, the court provided preliminary instructions which included the following:

> All right. We will take a 15-minute recess. And we are going to give you buttons that identify you as jurors. We want you to wear those buttons. And don't be offended if, when you come and go, you run into the lawyers or the parties or a witness, if they don't speak to you and say good morning, how are you, because they are under court order not to do that, and vice versa. So no one is being rude. Just the way of ensuring that no one approaches you or talks to you, and vice versa. Thank you.

Excerpt of Proceedings (#140) at p. 2.

These instructions were given in the presence of both parties and their attorneys.

Notwithstanding L.R. 48-2 and clear admonition by the court that the parties were to have no contact with the jurors, plaintiff initiated contact with juror #4 over a lunch break during the second day of trial while she was dining at a restaurant nearby the courthouse. The juror became upset and shaken by plaintiff's actions in contacting and speaking to her, and reported the incident to court staff upon returning to the courthouse. The court then informed the parties and attorneys of this development outside the presence of the jury and directed them to wait outside the courtroom while the court inquired of the juror on the record about the contact. Upon inquiry, the juror related that plaintiff saw her in the restaurant, nodded at her and "gave her a look," but she tried to ignore him. However, plaintiff then approached her and stated something to the effect that "you better not doze off this time," which made the juror uncomfortable, upset, frustrated and awkward. According

Page 2 - ORDER

to the juror, after plaintiff spoke to her in this manner, he went to the other side of the restaurant and continued to stare at her.

During the colloquy with the court, it was manifest that plaintiff's contact with her disturbed her greatly as she lost her composure several times while relating the incident and expressed concern that he would approach and speak to her given the court's instruction at the beginning of the trial. At the conclusion of the inquiry of juror #4, the court inquired whether she had informed the other jurors about the incident after she returned to the jury room and she replied that she had.

The court then sent juror #4 back to the jury room, brought in the parties and attorneys, and had the court reporter read to them the entirety of the transcript of the colloquy between the court and the juror. Plaintiff then asked to address the court, admitting that he had approached the juror and spoke to her but insisting he did not intend to upset her or prejudice the case.

Under Fed. R. Civ. P. 41(b), the court may dismiss a case with prejudice if plaintiff fails to comply with a court order or the rules of procedure. In order for a court to dismiss a case as a sanction, the court must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendant; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999). In addition, the degree of of personal responsibility of the plaintiff may also be considered. E.g., Chandler Leasing Corp. v. Lopez, 669 F.2d 919, 920 (4th Cir. 1982). Dismissal is a harsh penalty and, therefore, it should only be imposed in extreme circumstances. Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992).

I begin my analysis by noting that the plaintiff's improper contact with juror #4 was not

Page 3 - ORDER

simply an innocent or inadvertent faux pas on his part. Rather, it was a blatant violation of this court's admonition regarding contact with jurors of which plaintiff was fully aware, having been present during the selection of the jury and the court's preliminary instructions. Rather than going the other way after seeing the juror at the restaurant, he deliberately walked over to her and commented on her attentiveness (or lack thereof) during the trial ("you better not doze off this time"). He followed up on his comment by continuing to stare at her after moving back across the room. His highly improper contact clearly unnerved the juror and significantly compromised her ability to continue on the jury. In addition, because she informed the other jurors about the incident when she returned to the courthouse, this court was faced with the delicate task of determining, in the middle of trial, what effect plaintiff's contact with juror #4 may have had on the other jurors as well. This would have resulted in a substantial disruption of the orderly process of trial, all because the plaintiff willfully disregarded the court's admonition that there was to be no contact between a party and any member of the jury.

The court has little doubt that plaintiff's actions in approaching and conversing with the juror was purposeful and represented an effort to gain some sort of an advantage in the case. The reason we inquire of jurors during voir dire whether they know any of the parties is to determine whether there is a relationship or familiarity that could affect their ability to be impartial. A personal conversation with a juror after selection invokes the same concerns about the injection of improper influence that could impact her duties as a juror.

Furthermore, I do not consider the plaintiff's actions in a vacuum. To put this conduct in context, I set forth the following background:

As noted previously, this case concerned a traffic stop, detention, and search of plaintiff and

his two companions by an Oregon State Trooper as the trio was en route from Oakland to Portland. The State justified the detention of plaintiff and his associates on the grounds that the trooper had reasonable suspicion to believe they were engaged in criminal activity (e.g., transporting drugs). In part, he based his suspicions on their purported nervousness and evasiveness when he questioned them about the purpose of the trip. Although no drugs were found in the rental car (other than a small amount of personal marijuana resulting in a citation) following a search authorized by the rental car agency, the State developed evidence after this lawsuit was filed that one of plaintiff's companions (Jose Holmes) was the ringleader of a criminal enterprise that was using stolen and fraudulently obtained credit cards to withdraw over $500,000 in cash from ATM machines in numerous transactions throughout California, Phoenix, Seattle and Portland. The State listed a Secrete Service Agent as a potential witness in the case and intended to call him to testify that Holmes and plaintiff and the third occupant of the vehicle during the trip in question were engaging in this criminal enterprise when stopped en route by Trooper Bennett. The relevance of this evidence, according to the State, was that it buttressed Bennett's observations that they were nervous and evasive and explained the reason for such.

In order to develop this evidence, the State scheduled the videotaped deposition of Holmes prior to trial at the United States Penitentiary in Florence, Colorado where Holmes was serving his sentence imposed after he was convicted of charges related to the credit card fraud. Shortly before his deposition was taken, Holmes made a phone call from prison to plaintiff, wherein the two discussed the case and Holmes' upcoming deposition. Apparently, Holmes and Cooper were unaware that the Federal Correctional Institute routinely records telephone calls between inmates and outside parties. The State subsequently obtained a transcript of the recorded conversation, which

Page 5 - ORDER

reflects that Holmes and plaintiff discussed what to say regarding the purpose of the trip:

> (2:33) COOPER: Yeah. Yeah. Yeah, and all that. So I gotta tell ya, I told my lawyer, She was like, well, it's better if you all don't talk, you know. I say, well, I ain't gonna tell a man a story, he's lived it just like me. You know what I'm sayin', so what are we talkin'? I ain't coachin' you. You know what to say. You know what I'm sayin'.

> (2:48) HOLMES: Yeah, but...

> (2:50) COOPER: So...

> (2:51) HOLMES: (Inaudible), but I forgot why we was even out there for anyway in the first place.

> (2:56) COOPER: Yeah. Hey, you know, luckily they didn't even...wasn't...wasn't up on that, you know.

> (3:00) HOLMES: So.

> (3:01) COOPER: And that's what's happening now.

> (3:03) HOLMES: I... I say we went out there to go see a what we go, out there to see a basketball game or somethin'?

> (3:07) COOPER: Go visit some friends, you know?

> (3:10) HOLMES: Yeah...

> (3:10) COOPER: Out there, yeah, to Portland just to go hang out chill with some friends for the weekend. You know I don't think they going to get all into that, though, you know.

> (3:17) HOLMES: I say we went out there to go see the...we was gonna go see the basketball game, that Portland game or somethin', huh.

Certified Transcript of Telephone Recording on January 8, 2013, provided by United States Penitentiary Administrative Maximum Facility, Florence Colorado (attached as Exhibit C to Declaration of Heather J. Van Meter (#87)) at p. 4.

Subsequently at his deposition, taken on January 18, 2013, Holmes, in response to the State's

Page 6 - ORDER

question "why were you coming to Oregon?", answered "...to see a basketball game, see a friend."

Thereafter, the State filed a motion for sanctions against plaintiff including dismissal of the case, for alleged witness tampering based, in part, on the attempt to coordinate plaintiff's and Holmes' stories regarding the purpose of the trip to Oregon.

This court denied the motion primarily on the basis that I found the probative value of the purpose of the trip was substantially outweighed by the prejudicial impact of allowing evidence regarding the credit card fraud conspiracy before the jury. Given the ruling that evidence of the purpose of the trip was not going to be admitted, I declined to dismiss the case despite the contents of the recorded conversation, which strongly supported the State's position that plaintiff and Holmes were improperly scripting their proposed testimony on the subject.

The exchange between Holmes and plaintiff Cooper provides a backdrop for the exchange between plaintiff and the juror. A party who is willing to thwart the truth-seeking function of a trial by manipulating testimony suffers from a significant credibility deficit when he denies any intent to influence the proceedings by contacting a juror during trial in clear violation of the rules and the court's admonition. In view of all the circumstances, as noted above, I find that plaintiff's contact with juror #4 was purposeful and motivated by a desire to gain an advantage in this case.

The other factors to be considered under Fed. R. civ. P. 41(b) also favor dismissal with prejudice. This case has been pending for 2½ years and the parties were approximately halfway through trial. Simply throwing out the work done to this point and starting over would result in a great waste of time and expense to the public and the defendant. In addition, the defendant would be substantially prejudiced in having to not only prepare for trial again, but in losing the efforts he

Page 7 - ORDER

extended in selecting and testifying before this jury.[1] I have other cases on my docket that mandate my attention and have no incentive to ignore plaintiff's misconduct by hitting the re-start button and keeping my fingers crossed that he will heed future orders of the court.

CONCLUSION

This action is dismissed with prejudice and judgment shall be entered in favor of defendant Kevin Bennett. Each party will bear his own fees and costs.

DATED this _6_ day of August 2013.

THOMAS M. COFFIN
United States Magistrate Judge

_____

[1]Although he was the defendant in this action, former Trooper Bennett was called by plaintiff as his first witness and had been on the stand until the noon recess of the second day of trial, when the incident with the juror occurred.

Page 8 - ORDER